# EXHIBIT 1

# AFFIDAVIT
## FOR PROBABLE CAUSE

**STATE OF INDIANA, COUNTY OF MARION, SS:**

Detective Charles Benner swears (affirms) that:

On November 19, 2013 at approximately 3:38 pm IMPD 911 dispatch received a call from the address of 801 N. Shortridge Rd, Apartment H11. The caller said that someone had "bashed" his mother's head in. Officer Lewis arrived on scene along with IFD. Officer Lewis said that the victim's head was covered with a blanket when they arrived on scene. The victim, identified as Ruth Rainsberger, was transported to Wishard hospital in critical condition. The caller, identified as William Rainsberger, and his brother, Robert Rainsberger, were transported to Police Headquarters to give a statement. It should be noted that during the initial investigation, both medic and hospital personnel believed that the victim may have sustained a gunshot wound. The fact that the 911 caller said his mother's head was bashed in without actually seeing her head is indicative to the affiant that he may have knowledge of how she sustained the injury.

On December 4, 2013 I took a statement from Firefighter Carl Wooldridge. Wooldridge said he was the first to have contact with the caller who was standing outside of the apartment building when fire arrived on scene. The white male on scene told Wooldridge that someone had "caved his mother's head in." Wooldridge went to the apartment door and noticed it was slightly ajar. The victim was lying on the floor between a chair and a coffee table. Wooldridge said it was immediately apparent to him that the victim was breathing even though she had a blanket covering her head. He said the blanket appeared to cover the entire head and not just one side. The blanket was soaked in blood and was stuck to the victim's head. Wooldridge thought it was strange that the caller said her head was caved in when it was obvious that he had not removed the blanket to check on his mother. Fire and ambulance personnel thought the victim may have been shot and thought it was not normal that there was not any blood spatter on the walls or ceiling. Wooldridge said the apartment seemed to be in orderly condition. The caller was identified as William Rainsberger.

I requested crime lab to the scene and 4439 CSS Lane responded to the scene. A walkthrough of the apartment revealed that there were no signs of forced entry. There were a few drawers in the victim's bedroom that were pulled out halfway with no sign of anyone rifling through the contents. There were a large amount of boxes in a back room that were untouched. There was a lockbox in the back room in plain view that contained savings bonds belonging to the victim. The victim's checkbook, some cash and credit cards were still present inside the apartment. The only blood found on the scene was on the blanket and on the floor where the victim was found.

I swear (affirm), under penalty of perjury as specified by IC 35-44-2-1, that the foregoing representations are true.

_____
AFFIANT

DATED: May 22, 2014

_____
DEPUTY PROSECUTING ATTORNEY
NINETEENTH JUDICIAL CIRCUIT

_____
JUDGE

**Affidavit for Probable Cause**

From: Detective Charles Benner

On November 19, 2013 I conducted an interview of William Rainsberger at Police Headquarters. William said he has been taking care of his mother on a daily basis for the past few years. He pays all of her bills and has power of attorney responsibility over her finances. He said he last saw his mother on Monday night around 6:00 pm. He left her apartment and went to Plainfield to spend the night with his wife. He returned home to 13th Street around 9:00 am on Tuesday morning and just hung out at home all day. He said that around 3:30 pm he went to the Kroger on 10th St and bought an iced tea. He then drove across the street to check on his mother. He said he checked her mailbox and went out to his car before going to her door. He said when he used his key to open the door it appeared that the door was already unlocked. He opened the door and saw his mom lying on the floor with a blanket over her head. He walked around a coffee table and put his tea down on the table. He saw some blood on the floor and on the blanket so he called 911. He said his mom was breathing loudly as if she was snoring. I asked why he didn't take the blanket off to check his mom and he said he thought he would do more damage by touching her. He called 911, left the apartment after closing the door, and went outside to wait for the ambulance. He also said he had walked through the residence to check for anyone inside before he called 911. I asked William about his mother's finances and learned that she has approximately eighty to one hundred thousand dollars in savings and bonds that will be distributed to her three children if she were to die.

On November 19, 2013 I spoke to Robert Rainsberger who said he had not seen his mother for a few days. He recently had his home foreclosed upon and moved in with William this past August. He said he was hanging out at home on Tuesday when William called and told him to get over to his mom's apartment immediately. Robert drove his vehicle to Shortridge and was stopped by police when he arrived. He said his mother was taken away in an ambulance and he waited in a police car until I transported him downtown to give a statement. I drove Robert to headquarters and he did not say one word on the way unless I asked him a question. At no time did Robert or his brother, William, ever ask me how their mom was doing or if they could get to the hospital to see her.

On November 20, 2013 I spoke to Rebecca Rainsberger. She said she usually checks on her mother once a week and had last been to her apartment on Monday, November 18th. I asked her if she was at the apartment at all on Tuesday and she said no. Phone records confirmed that her cell phone was not near Ruth Rainsberger's apartment when the incident occurred.

On 1-13-14 I spoke to Delbert Pickens who delivers meals on a daily basis to Ruth's apartment. Mr. Pickens said he delivers a meal to Ruth Monday through Friday and almost always arrives around 10:30 am. On 11-19-13 Delbert said he arrived at Ruth's address around 10:30 am. He knocked on the door and she did not answer. He called her phone and could hear it ringing inside the apartment. He did not hear any signs that anyone may be inside the apartment so he left.

On November 20, 2013 I attended the autopsy of Ruth Rainsberger which was performed by Dr. Tashjian. He determined that the cause of death was due to multiple blunt force trauma injuries to the head and the

I swear (affirm), under penalty of perjury as specified by IC 35-44-2-1, that the foregoing representations are true.

_____
AFFIANT

DATED: May 22, 2014

_____
DEPUTY PROSECUTING ATTORNEY
NINETEENTH JUDICIAL CIRCUIT

_____
JUDGE

**Affidavit for Probable Cause**

**From:** Detective Charles Benner

manner was ruled a Homicide. The wounds were possibly inflicted with a hammer or similar type weapon.

On November 20, 2013 I spoke to William and Robert Rainsberger once again at Police Headquarters. I asked them if they would submit to a polygraph so that I could eliminate them as suspects and they adamantly said no, they would not take a polygraph. All three siblings stormed out and I have not heard from them since.

I have not at any time during this investigation, been asked by any of the victim's children if I have any suspects or any other information in reference to this case.

On November 27, 2013 I received a call from Attorney Brad Keffer, who said he is now representing William Rainsberger. I advised him I would be requesting a limited search warrant for William to obtain a buccal swab and major case prints. I also received a call from Attorney John Christ, who said he is now representing Robert Rainsberger. I made arrangements for William and Robert to come to Police Headquarters on December 4, 2013 so that I could serve the limited search warrants for prints and a DNA buccal swab. Both subjects did show up on December 4, 2013 with their attorneys and I obtained prints and buccal swabs from both.

On November 22, 2013 Detective Tudor and I recovered a video from the Kroger store located at 7101 E 10th St. The video showed William Rainsberger drive onto the Kroger lot on November 19, 2013 at approximately 3:32 pm. Mr. Rainsberger got out of the car and approached a garbage can located near the Red Box video dispenser. Rainsberger appeared to pull out a straight object from his person which he placed in the garbage can. As he placed the item in the trash he appeared to look around for cameras. He then stepped over to the Red Box and punched some buttons. He looked around again before he entered the store. He entered the store and bought an iced tea which he paid for with cash. He appeared to let someone in line use his Kroger plus card but did not use the card for his purchase. William exited the store and looked around several times before returning to his vehicle. He left the lot and drove to his mother's apartment where he found her down and called 911.

I received cell phone records for the Rainsberger family and obtained the following information. On November 19, 2013 at 2:40 pm, Robert Rainsberger received a call from Ruth Rainsberger's landline to his cell of 317-357-5791. This is hours after it is presumed that Ruth Rainsberger received her injuries. This presumption is based upon the fact that a delivery person knocked on her door at 10:30 am and attempted to call her but did not get an answer and also based upon the fact that the blanket contained dried blood which caused the blanket to stick to the victim's head which, in the affiant's experience, would indicate the victim was not recently attacked (prior to the 911 call). Within an hour of this phone call, William Rainsberger is on video across the street at the Kroger. He throws an object away in the

I swear (affirm), under penalty of perjury as specified by IC 35-44-2-1, that the foregoing representations are true.

AFFIANT

DATED: May 22, 2014

DEPUTY PROSECUTING ATTORNEY
NINETEENTH JUDICIAL CIRCUIT

JUDGE

(Page 3)

**Affidavit for Probable Cause**

**From:** Detective Charles Benner

trash before entering the store to buy an ice tea. He then goes to his mother's apartment and calls the police. William then stood outside and left his mother unattended until the police arrived.

Cell phone records were obtained for William Rainsberger, including cell tower site locations for the day of November 19, 2013. Those records do not show William Rainsberger outside of the area of Shortridge and 10th St. during the relevant time period.

On 1-13-14 I received the financial records for Ruth Rainsberger, from the Financial Federal Credit Union located at 7101 E 56th St. The records show the following balances existed at the time of Ruth's death. There was a checking account balance of $15,098.90, savings account balance of $4,605.65 and certificate balances of $79,058.15. I recovered a beneficiary form from Ruth's apartment shortly after she was discovered which revealed that William, Robert and Rebecca Rainsberger are the beneficiaries for all of her assets.

All of these events occurred in Marion County, Indiana.

I swear (affirm), under penalty of perjury as specified by IC 35-44-2-1, that the foregoing representations are true.

AFFIANT

DATED: May 22, 2014

DEPUTY PROSECUTING ATTORNEY
NINETEENTH JUDICIAL CIRCUIT

JUDGE