**Affidavit of David R. Hennessy**

1. I am 62 years old, of sound mind, and make this affidavit based upon my own personal knowledge.

2. I am a lawyer in good standing in Indiana and have been practicing criminal defense law in Indianapolis since my admission to the bar in 1982.

3. On May 27, 2014, William Rainsberger was arrested and charged with the murder of his mother, Ruth Rainsberger.

4. I represented William on this murder charge.

5. On July 7, 2015, over a year after William's arrest, the prosecutor, citing "evidentiary problems," moved to dismiss the murder charge against him, which the criminal court granted the same day.

6. William's arrest and the murder charge were based upon a probable cause affidavit written and signed under oath by Det. Charles Benner.

7. Det. Benner swore in the charging information against William that on November 19, 2013, William Rainsberger "did knowingly kill another human being, namely: Ruth Rainsberger, by inflicting blunt force injuries with a hammer or similar object, at or against the person of Ruth Rainsberger[.]" Information, 5/22/2014.

8. Detective Benner never had a murder weapon, confession, eyewitness, nor direct evidence that William Rainsberger killed his mother.

9. Detective Benner's evidence against William was all circumstantial, and the case against William was weak even if all the things alleged in Detective Benner's probable cause affidavit were true.

10. Not all the things in Detective Benner's probable cause affidavit were true; instead, the

   affidavit contained several demonstrably false and misleading statements, and omitted information known at the time which tended to show William Rainsberger was not involved in Ruth Rainsberger's murder.

11. When those inaccurate and misleading statements are stripped away from Detective Benner's probable cause affidavit, and the omitted evidence is included, it is apparent that William Rainsberger should never have been arrested or charged with Ruth Rainsberger's murder.

12. Detective Benner rushed to judgment, declaring William his prime suspect within 24 hours of the attack. Det. Benner admitted that William became his only suspect after William declined to take a polygraph test because he knew they were considered unreliable. All further investigation was limited to attempts to confirm Det. Benner's unfounded belief. When the evidence did not support his suspicions, Det. Benner misconstrued facts against William, distorted other evidence, and ignored exculpatory evidence in William's favor.

13. Detective Benner included an incorrect critical time in his probable cause affidavit, which he knew or should have known was false, by stating that a telephone call was made to Robert Rainsberger's cell phone from Ruth Rainsberger's landline telephone at 2:40 pm (PCA, p. 3, para. 6) which was well after Ruth Rainsberger had been attacked, and an hour before William telephoned 911 from Ruth Rainsberger's landline telephone reporting that she was injured. Robert Rainsberger was William's brother, and William had admitted that he made this call to his brother from his mother's phone, but contended that it was made <u>after</u> finding her shortly after 3:30 pm, rather than the 2:40 pm time.

14. Detective Benner's probable cause affidavit stating this call occurred at 2:40 pm rather than

        3:40 pm, was particularly incriminating of William Rainsberger, as it placed William in his mother's apartment, with her critically injured, a full hour before he telephoned 911 and a full hour before he said he discovered her.

15. But the 2:40 pm time was not the time that call was made; while the raw data from Robert Rainsberger's cell phone company showed an entry at 2:40 pm, it also showed a second entry for the same call at 3:40 pm The 2:40 pm entry was due to the call being routed through Chicago, which was one hour earlier than Indianapolis time. This was readily apparent from the record, which contained the area code 773 on the 2:40 p.m. call, which is a Chicago area code. I determined the discrepancy immediately upon viewing the call records.

16. Also, well before filing his PCA in court, Det. Benner had in his possession Ruth Rainsberger's AT&T landline telephone records, which accurately showed this call was made at 3:40 pm, and which showed no call made from that line at 2:40 pm.

17. Also, well before filing his PCA in court, Det. Benner knew that both Robert and William had voluntarily told him that the call was made at or around the 3:40 p.m., which matched the AT&T landline records.

18. Detective Benner's decision to ignore the correct information, and instead use the false call time of 2:40 pm in his PCA was false and misleading and unfairly incriminating of William Rainsberger.

19. The use of this false 2:40 pm call time was also unfairly incriminating of William Rainsberger in connection with Det. Benner's biased and distorted portrayal of William throwing away trash at the Kroger grocery store located across the street from Ruth

Rainsberger's apartment.

20. Detective Benner inaccurately depicted facts in his probable cause affidavit by stating that at approximately 3:30 pm, while at the Kroger store William pulled a "straight object" from his person, and was "looking around for cameras" when he threw this item away in a trash bin at the front of the store. (PCA, p. 3, para. 5.).

21. The Kroger security video does not depict William pulling anything from his person nor looking around for cameras. It simply shows him throwing away a piece of trash. By falsely stating the time of the telephone call from Ruth Rainsberger's apartment at 2:40 and then implying that William left the apartment then went to the Kroger store to dispose of a weapon, and by misconstruing what the Kroger video depicted, Det. Benner mislead the court into thinking that William was disposing of the murder weapon.

22. This was a pretty preposterous assertion, as why would a murderer throw away a murder weapon in broad daylight at the very public entrance to a Kroger grocery store where it is common knowledge that the premises are under video surveillance when there were several obscured dumpsters in the area.

23. Detective Benner also mislead the court in his Probable Cause Affidavit by stating that cell phone tower site location records "do not show William Rainsberger outside the area of Shortridge and 10th St. during the relevant time period." (PCA, p. 5, para. 2) Cell phone records do not show William *in* this area anytime from 5:41 pm on Nov. 18, 2013 to 7:23 pm on Nov. 19, 2013, because there is no location information from cell phone data for his telephone during that period. Detective Benner sought to mislead the court into thinking that William was in the vicinity of his mother's apartment during what might have been the

time of her attack.

24. Detective Benner mislead the court in his probable cause affidavit by stating that nothing was stolen from Ruth Rainsberger's apartment, thus eliminating robbery as a motive and making it more likely that the murder was committed by a family member.

25. In truth, Detective Benner knew that the Rainsberger children had described their mother's purse and prescription medication, both of which was missing and never recovered. IMPD Forensic Services, which inventoried the scene, noted in one of its reports, which Det. Benner had, that "no prescriptions found, purse is missing." Det. Benner also falsely stated in his probable cause affidavit that: "There was a lockbox in the back room in plain view that contained savings bonds belonging to the victim." In truth, the lock box was in a back bedroom closet, not in plain view, and never contained savings bonds. Detective Benner simply ignored this information in his probable cause affidavit to mislead the court into thinking that a family member like William was responsible for the attack.

26. Detective Benner also mislead the court in his probable cause affidavit by stating that because William reported that his mother had been hit in the head though "fire and ambulance personnel thought" that Ruth Rainsberger had been shot, this indicated that William knew "how she sustained the injury," thus implicating him in the attack. (PCA, p. 1, para. 1).

27. It was clear from the statements of William and Robert Rainsberger that William did not know how their mother had been attacked, but that it had appeared to William that she had been struck on the top of the head. William simply told Det. Benner what it looked like to him.

5

28. William's thoughts on the cause of his mother's injuries was reasonable under the circumstances and information he possessed at the time, and did not implicate him in her death.

29. There was no blood splatter, no odor of gun powder, or any spent gun cartridges in Ruth Rainsberger's apartment, all of which would be associated with a gunshot.

30. The incorrect "gunshot wound" conclusion was started by Firefighter Carl Wooldridge, one of the first responders, who removed the blood soaked blanket which had dried upon Mrs. Rainsberger's head and thought he saw a gunshot entrance wound on her forehead. Mr. Wooldridge was mistaken, as the autopsy confirmed, but not before Mr. Wooldrige had passed his incorrect assumption on to others at the scene. Det. Benner made it seem incriminating that William had not removed the blanket but William had told him he did not for fear of making the bleeding worse.

31. Rather than investigating this issue, Detective Benner simply used William's speculation about how his mother had been injured as evidence that he had killed her. In the context of all the information available to Det. Benner, this was not a reasonable inference.

32. Detective Benner misleadingly suggested to the court in his PCA that William Rainsberger was uncaring and unconcerned for his mother's health, making it appear more likely that he would have carried out the attack on her. Det. Benner did this in a number of ways, including:

    a. After discovering his injured mother, William telephoned 911 and ran out the front door of the apartment building to flag down the ambulance. William told Det. Benner he did this because the apartment complex is complicated and the buildings

        poorly marked, and he wanted to get emergency medical help for his mother as soon as possible. However, Detective Benner omitted all the reasons William told him he went outside, and simply put in his PCA that after calling 911 William "went outside to wait for the ambulance" (PCA, p. 2, para. 1) and that "William left his mother unattended until the police arrived" (PCA, p. 4, para. 1) in order to make William seem uncaring to the court.

b.    Detective Benner put in his Probable Cause Affidavit that while William was detained for questioning downtown at police headquarters during the evening of Nov. 19, 2013, that he did not ask the detective how his mother was doing and never asked to be taken to the hospital. (PCA p. 2, para. 3) This was misleading, as Detective Benner knew William was in frequent contact with his sister Rebecca Rainsberger, who was at the hospital with their mother during William's detention and interrogation, and that she was keeping William informed of their mother's condition. William actually read one of Rebecca's texts to Detective Benner during his interrogation (Nov. 19, 2013 Transcript at 13) in which Rebecca advised William of their mother's condition and instructed him which entrance he should enter at Eskenazi Hospital. Detective Benner said "we'll get you there" which he never did. Thus there was no need for William to ask Detective Benner how his mother was doing or for a ride to the hospital. Detective Benner's portrayal of this exchange was dishonest and misleading and obviously meant to prejudice William Rainsberger.

c.    Detective Benner also misled the court in his probable cause affidavit when he said

      that after Nov. 20, 2013, that "I have not heard from them [the three Rainsberger childrenf] since." (PCA, p. 3, para. 2.) Rebecca Rainsberger telephoned Detective Benner twice after this time and left messages for him to return her call, and he chose to not return either call. Again, this lie was designed to make it appear that the children were uncaring and culpable in their mother's death.

33. Detective Benner misled the court in his PCA when he stated that William "stormed out" of police headquarters on Nov. 20, 2013, after refusing to take a polygraph (PCA, p. 3, para. 2.). Instead, Detective Benner and his partner Tom Tudor left the room before the three Rainsberger children did. Additionally, Detective Benner did not reveal in his PCA that he lied to the children to get them to come downtown on the day their mother died, by telling them he had the results of the autopsy which he wanted to discuss with them. Instead of sharing the autopsy results with the family, Det. Benner accused William and Robert of killing their mother for money, and confronted them with a request to take a polygraph test.

34. Detective Benner also mislead the court in his probable cause affidavit by suggesting that William had a financial motive for killing his mother. While he noted that William's inheritance of his mother's estate was approximately $33,000 he omitted the fact that William was comfortably retired and owned his house free and clear of any mortgage.

35. Detective Benner also omitted important exculpatory evidence from his probable cause affidavit.

36. DNA is often important evidence which can be either compelling evidence of guilt or exculpatory evidence of innocence.

37. Detective Benner had the Marion County Forensic Services Agency collect DNA samples

from Ruth Rainsberger's clothing.

38. Detective Benner also obtained a search warrant to obtain DNA samples from William and Robert Rainsberger.

39. The Marion County Forensic Services Agency reported to Detective Benner well before he completed his probable cause affidavit that Ruth Rainsberger's clothing tested positive for DNA evidence from two unknown male subjects.

40. The Marion County Forensic Services Agency reported to Detective Benner well before he completed his probable cause affidavit that William and Robert Rainsberger were excluded as having contributed the male DNA evidence found on Ruth Rainsberger's clothing.

41. Detective Benner omitted this important exculpatory evidence from his probable cause affidavit he filed against William Rainsberger.

42. As a direct result of Detective Benner's misleading statements, and his omission of important exculpatory evidence, William Rainsberger was falsely arrested and accused of murdering his own mother; charges which were eventually dropped when the assertions in Detective Benner's probable cause affidavit fell apart, and it became apparent that the State had no case against William Rainsberger.

43. Prior to dismissal depositions of two individuals present in the area when Mrs. Rainsberger was attacked contradicted themselves and put themselves in an out of the way area peering into Ruth's apartment that indicated they were casing it. I asked the police and prosecutors to compare the DNA of those two individuals to the unknown standard but they would not. I affirm under the penalties for perjury that the above statements are true.

February 8, 2017

/s/ David R. Hennessy

David Hennessy