UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

WILLIAM RAINSBERGER,          )
                                     )
     Plaintiff,                )
                                     )
     v.                     )    Case No.:  1:16-cv-103-TWP-MJD
                                     )
CHARLES BENNER,             )
                                     )
     Defendant.             )

## DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY

At the summary-judgment stage, Detective Benner objected to the testimony offered by both of Rainsberger's experts. The Court did not reach those issues in resolving the summary-judgment motion, but it did warn Rainsberger to think twice about offering those experts at trial:

> "The Court has not relied on either affidavit or the expert report in making this ruling, and, therefore, need not address Benner's arguments. Because the issue may arise again at trial, however, the Court notes that many of Benner's arguments regarding the opinions in the expert report appear to be well taken, and William should carefully review the applicable law when deciding whether to offer the expert's testimony at trial."

[Dkt. 73 at 14].

Rainsberger has not heeded the Court's advice. Instead, he continues to offer both witnesses on his final witness list. This motion is therefore necessary. The Court must now reach the questions it did not reach at the summary-judgment stage, and in doing so it should exclude Dr. Kim Rossmo and David Hennessy from testifying.

### I.      Standard

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the framework established by the Supreme Court in *Daubert v. Merrill Dow Pharmaceuticals, Inc.,*

509 U.S. 579 (1993), and *Winters v. Fru-Con Inc.*, 498 F.3d 734 (7th Cir. 2007). *U.S. v. Pansier,* 576 F.3d 726 (7th Cir. 2009). Rule 702 allows the admission of expert testimony if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. *Id.* at 737. The district court, however, must act as the gatekeeper to ensure that the proffered testimony is both relevant and reliable. *Id.* (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147-149 (1999)). The insistence on reliability helps to ensure the integrity of the judicial process, and is of such transcendent importance that judges can act *sua sponte* to prohibit testimony that does not pass muster under *Daubert*. *Davis v. Duran*, 277 F.R.D. 362 (N.D. IL 2011)(citing *Mid-State Fertilizer Co. v Exchange Nat'l Bank of Chicago*, 877 F.2d 1333, 1340 (7th Cir 1989); *O'Conner v. Commonwealth Edison Co.,* 13 F.3d 1090, 1094 (7th Cir 1994)).

Expert testimony is admissible if offered by a witness qualified as an expert by knowledge, skill, experience, training, or education, and this specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, and if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. *U.S. v. Conn,* 297 F.3d 548 (7th Cir. 2002)(citing Fed.R.Evid 702). Rule 703 requires the expert to rely on "facts or data" as opposed to subjective impressions. *Ford v. Marion County Sheriff's Dept*., 2018 WL 1169216 (S.D. Ind. 2018).

## II.    Much of Rossmo's testimony is inadmissible under Rule 702 and 704(b).

Dr. Kim Rossmo is a research professor at Texas State University. [Dkt. 50-31, pg. 60]. He is the University Chair in Criminology and the director of the Center for Geospatial Intelligence and Investigation. [Dkt. 50-31, pg 60] Dr. Rossmo holds a Ph.D. in Criminology from Simon

Fraser University. [Dkt. 50-31, pg 58.] His thesis was on geographic profiling. [Dkt. 50-31, pg 58.]

Dr. Rossmo's Master's thesis was in Fugitive Migration Patterns. [Dkt. 50-31, pg 58.] He has been

a management consultant for the Bureau of Alcohol, Tobacco, Firearms and Explosives (2003-

2005), a director of research at the Police Foundation (2001-2003), and a Detective Inspector for

the Vancouver Police Department (1978-2001). [Dkt 50-31, pg 59.] He was never a police officer

in the United States. His experience with police "best practices" as a police officer in Canada

would not include familiarity with the Fourth Amendment or United States Constitution. While he

was a police officer, he never worked as a Homicide Detective. [Depo pg 18.]

Dr. Rossmo's areas of expertise are limited to the following: geography of a crime and

criminal investigative failures. [Depo pg 18.] However, the majority of his courses, lectures, and

presentations are in the area of geographical profiling.[1] [Dkt 50-31, pgs 58-64]. Geographical

profiling is not an issue in this case.

In this case, Dr. Rossmo reviewed statements, documents and depositions from both the

criminal and civil cases. [Dkt 50-31, pgs 54-56.] He reviewed the Seventh Circuit's decision in

*Hart v. Mannina,* 798 F.3d 578 (7th Cir. 2015), 1:10-cv-cv-01691-WTL-DML. [Dkt. 50-31, pg

56.] He also reviewed this Court's decision on the defendant's Motion for Summary Judgment in

*Starks v. Moore*, 2012-cv-01008-WTL-DML. [Dkt. 50-31, pg 56.] Detective Benner was not a

party in either of those cases. As best as Detective Benner can tell from his resume and deposition,

reading those two cases is the extent of Dr. Rossmo's knowledge regarding the legal standards

governing in this circuit.

---

[1] Geographic profiling is a quantitative analysis of the crime locations of a connected series. A computer program is used to complete a number of calculations that produce maps which outline the most probable area where the offender was based or where he resided. [Depo, pg 20].

Dr. Rossmo says he gets involved in only those cases where he has determined the client is factually innocent. [Depo pg 6.] Regarding this case in particular, Dr. Rossmo made a determination that William Rainsberger was innocent. [Depo pg 7.] That determination is what led him to become involved in the case. [Depo pg 7.] When asked what information he considered that led him to this conclusion, Dr. Rossmo said that he saw no evidence that suggested Rainsberger was guilty. [Depo pg 8.]

Dr. Rossmo's report opines that Benner was suffering from tunnel vision and confirmation bias in the Rainsberger investigation. [Dkt. 50-31, pg 30] His conclusions are not based upon scientific facts or data, and do not appear to be the product of reliable principles and methods. *See Conn, supra*. He then lists eight "core allegations" contained in Benner's probable cause affidavit. [Dkt 50-31, pgs 11-12.]

- The victim's assets totaled almost $100,000 and William Rainsberger was, along with his brother and sister, a beneficiary of her will.

- Cell phone records show William Rainsberger was in the area of the murder during the time period the murder was most likely committed.

- Cell phone records show a call was made from the victim's landline to Robert, William Rainsberger's brother, an hour before William claimed to find his mother's body.

- In that intervening hour, William Rainsberger threw a "straight object" into a garbage can in front of the Kroger store located across the street from his mother's apartment. He looked around for cameras both before and after doing this.

- There were no indications of a burglary or to the victim's apartment- no signs of forced entry (William Rainsberger had a key), no evidence of ransacking, and nothing stolen.

- Rainsberger told people his mother's head had been bashed in even though he had not seen the actual injury, suggesting he knew how the injury was inflicted.

- After calling 911, Rainsberger left his mother unattended in the apartment and sat outside until police arrived. He did not ask detectives how she was doing or if he could go to the hospital to see her. He did not show signs of grief or show interest in the progress of the investigation.

- Rainsberger refused to take a polygraph and became angry when asked to do so.

These eight core allegations are addressed by Dr. Rossmo by attacking each in turn. His report reads like an attorney's summation following a trial. Far from a dispassionate examination of the facts, it is best described as argument advancing a particular point of view- namely that he believes Rainsberger to be innocent. [Depo, pg 7]. Contrary to 703 and *Daubert,* his opinion is not based upon sufficient facts or data. For example, Dr. Rossmo takes issue with the fact that "the police never established an accurate "relevant time period" for the victim's murder [Dkt 50-31, pg states that "a homicide investigator will normally obtain a time of death from a pathologist or medical examiner." [Dkt. 50-31 pg 13]. That is not the usual practice for detectives investigating homicides in Marion County, but having never spoken to Detective Benner, Dr. Rossmo would not know that.[2]

The eight "core allegations" are addressed by Dr. Rossmo by attacking each in turn. Rossmo concludes that Benner rushed to judgment, suffered from common cognitive errors like tunnel vision and confirmation bias, and failed to investigate alternative theories of the murder. [Dkt. 50-31 at 44.] In applying the second prong of 702, it is unclear what theory or technique was employed by Dr. Rossmo in reaching these conclusions.

---

[2] Dr. Rossmo testified that he had never spoken with Benner, and did not know anything regarding his work in other cases or investigations. [Depo pg 30].

If the "theory" is a rush to judgment and cognitive errors such as tunnel vision and confirmatory bias, the "technique" in such an evaluation is overwhelmingly subjective. No tests of this theory, or standard by which an evaluation can be made have been advanced by Dr. Rossmo or Plaintiff. Without a technique or standard, it is virtually impossible for the Court to apply or consider the remaining *Daubert* factors. The subjective tunnel vision theory does not lend itself to being tested, or being subjected to peer review. As a subjective evaluation, it is ripe for a high potential rate for error. The evaluator decides- with the benefit of hindsight and based upon no established neutral factors- what should have or should not have been done in the investigation. Much of this decision is based upon the thought process of the officer, as well as an evaluation of the officer's credibility. There is no standard which can operate as a control to the operation of this technique, and no way to gauge if it has met with general acceptance. This is exactly the kind of subjective impression that runs afoul of the "facts and data" requirement of Rule 703. See *Ford v. Marion County Sheriff's Dept*., 2018 WL 1169216 (S.D. IN 2018), *supra.*

Dr. Rossmo's report discusses what Benner should have done and what his state of mind was regarding to Rainsberger and the investigation. Neither is admissible testimony. Rossmo offers his opinion as to the standard of care an officer must follow to establish probable cause. That opinion is inadmissible and it is inconsistent with the law. All an officer must do is establish probable cause. Whether or not probable cause exists under a given set of facts is a question for the Court to determine under the standard set out in binding cases like *Kaley v. United States,* 134 S.Ct. 1090, 1103 (2014); *Mannina v. Hart*, 798 F.3d 578, 587 (7th Cir 2015); *Fox v. Hayes,* 600 F.3d 819, 833 (7th Cir 2010); *Forman. v. Richmond Police Dept.,* 104 F.3d 950, 962 (7th Cir 1997). Once Benner had probable cause to believe Rainsberger committed the murder, he had no constitutional obligation to investigate alternative theories or search for exculpatory evidence. Id.

The relevant inquiry is whether Benner acted objectively reasonably in light of the facts and the law known to him at the time of the arrest. *Id.*

That Rossmo in hindsight thinks Benner's investigation could have been influenced by what he himself calls "common" cognitive or thinking errors that "frequently" impact real-world decision-making is immaterial. If anything, the report confirms that these sorts of thinking errors often operate at a subconscious level and are, for all practical purposes, as unavoidable for police officers as they are for any other humans. [Dkt. 50-31, pgs 5-10] (noting that "the possibility of mistakes and human error always exists," "[t]he reality is the system makes mistakes," and that "[l]ike all humans, police investigators, prosecutors, and forensic scientists can fall prey to cognitive biases"). This opinion does not lend itself to assisting the trier of fact understand the evidence or to determine a fact in issue.

It is well settled that determining the weight and credibility of witness testimony is the exclusive province of the jury and that experts are not permitted to offer opinions as to the believability or truthfulness of this testimony. *U.S. v. Hall,* 165 F.3d 1095, 1107 (7th Cir. 1999). In his deposition, Dr. Rossmo was asked about his conclusion that Benner did not look at the evidence in multiple ways on different occasions. In response, Rossmo stated that Benner seemed very cavalier about his error. [Depo pg 59]. Continuing, Rossmo stated that [Benner] "just jumps to some assumptions…he just looks at something once and he moves on because he is so busy." [Depo pgs 61-62]. When discussing the cell phone records, Dr. Rossmo opines that "it still seems that this [cell phone records discrepancy] was Detective Bierce's mistake and not his, and, therefore, not his responsibility, or just that the telephone company got it wrong." [Depo pg 58]. Rossmo concluded that Benner was "annoyed" by Rainsberger, stating "he's assigned this investigation to determine what happened, not to get someone in that annoyed him in the early

stages because he refused the polygraph test. And that seems to be what happened here." [Depo pg 67]. It is unclear what makes Rossmo an expert in determining whether someone is annoyed with someone else or how that sort of testimony would assist the trier of fact. It is likewise unclear what methodology one would employ to reach such a conclusion. Rossmo was unable to point to anything specifically that supported his conclusion that Benner was annoyed. [Depo pg 70]. Likewise, the majority of Rossmo's conclusions are without support. Rossmo's opinion on Benner's state of mind is inadmissible, and amounts to no more than an attack on his credibility.

An expert's credentials and methodology may be impeccable, but if the proffered testimony fails the general test of relevance under Rule 402, or if it is not likely to assist the trier of fact to understand the evidence or determine a fact in issue, then the district court should reject the proffer. *U.S. v. Hall,* 93 F.3d 1337 (7th Cir. 1996). Expert witnesses are unnecessary when the factfinder is "as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training." *United States v. Thomas,* 214 F.Supp.3d 187 (E.D. NY 2016)(citing *Salem v. U.S. Lines Co.,* 370 U.S. 31 (1962)). Expert testimony is warranted where the facts are such that inexperienced persons are likely to prove incapable of forming a correct judgement without expert assistance. *United Telecommunications Inc. v American Television and Communications Corporation,* 536 F.2d 1310 (10th Cir. 1976). On the other hand, expert testimony is not necessary where the matter is an issue that the jury can be expected to draw the correct inferences from the facts presented. *Id.* (holding that expert's opinion on the meaning of the words "best efforts" were properly excluded when the expert's definition was not substantially different that the common meaning of the words.)

In *Thomas,* the defendant sought to call an expert in the field of interrogation and false confessions. The court held that the testimony should be excluded. *U.S. v. Thomas*, 214 F.Supp.

3d at 191. The court reasoned that the proposed testimony about the relationship between interrogation techniques and false statements and the guilt-presumptive nature of the interrogation is within the common knowledge of the factfinder. *Id.* The proposed testimony would supplant the expert's opinion for that of the jury, and as such is inappropriate because it would usurp the jury's role. *Id.* The court further reasoned that the exclusion of this testimony did not leave the defendant without protection; cross examination of witnesses is sufficient to achieve the same effect as the proposed testimony. *Id.* at 192. (citing *Davis v. Alaska*, 415 U.S. 308 (1974)).

As in *Thomas,* the proffered testimony here is within the common knowledge of the factfinder. Presentation of what was done in the investigation and the events leading up to Rainsberger's arrest will be made by a variety of witnesses. Nothing in the presentation of these facts will be overly complex. Whether the actions taken in an investigation are reasonable under the circumstances is for the jury to determine. There is no need to have Dr. Rossmo interpret straightforward information and filter it back to the jury through his opinion. It will not will assist the trier of fact to understand the evidence or to determine a fact in issue. Cross-examination of the witnesses is the mechanism by which the investigation should be challenged.

An expert cannot testify as to credibility issues. *Goodwin v. MTD Products, Inc.,* 232 F.3d 600 (7th Cir. 2000). In *Goodwin,* Plaintiff suffered an injury to his left eye after being struck by a plastic wing nut discharged from the lawn mower he was using. Goodwin filed a product liability suit against the manufacturer, MTD Products. The defendants called a rebuttal expert, Gunter Plamper. MTD sought to have Plamper testify that he did not believe Goodwin's version of what occurred. The district court did not allow this testimony. The court held that MTD was not entitled to have expert give an opinion as to the veracity of Goodwin's testimony concerning the circumstances surrounding the accident when that opinion was based merely on speculation and

not on admissible scientific evidence. *Id.* at 609. The court reasoned that MTD could still argue to the jury that the accident occurred in a different way. *Id.* Credibility questions are within the province of the trier of fact. *Id.*

Likewise, testimony from Dr. Rossmo regarding Benner's credibility is inadmissible. The deposition and report make clear that Rossmo does not believe Benner's version of events or explanations. His proffered testimony would be a thinly veiled attack on Benner's credibility.

Rule 704(b) prohibits expert testimony on issues like intent, the truth or falsity of allegations, and legal conclusions- and as a result it prohibits much of Rossmo's testimony here. It is well-settled that expert witnesses may not opine whether undisputed facts are sufficient to establish probable cause. That is a question of law for the Court. *Mason v. City of Indianapolis*, No. 1:06-cv-258-RLY-TAB, 2007 WL 2700193, at *1 (S.D. Ind. Sept. 11, 2007) (citing *Smith v. Lamz*, 321 F.3d 680, 684 (7th Cir. 2003)); *see also United States v. Diekhoff*, 535 F.3d 611, 619 (7th Cir. 2008) (noting that so-called "fact-law conclusions" in which experts purport to apply the facts of a case to the governing legal standard are inadmissible). Hence, experts may not testify about whether a given police investigation was sufficient to justify probable cause, as an expert is no better suited than a jury to make that determination. *Wells v. City of Chicago*, No. 09 C 1198, 2012 WL 116040, at *14 (N.D. Ill. Jan. 16, 2102) (excluding expert testimony purporting to claim that plaintiff's detention was not justified by the investigation police performed because an expert is "no more qualified than a jury to determine whether probable cause existed"). Likewise, Rossmo cannot give an opinion about whether Rainsberger was wrongfully arrested, something he asserts in his report. Dkt. 50-31 at 44. That opinion is inadmissible under well-established Seventh Circuit law. *U.S. v. Diekhoff*, 535 F.3d at 619.

The second prong of the test set forth in Rule 702 requires the testimony be the product of reliable principles and methods. *U.S. v. Conn*, 297 F.3d at 555. In *Daubert,* the Supreme Court set forth five factors to guide a court in assessing the reliability of scientific expert testimony: (1) "whether a theory or technique…can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique or method has met with general acceptance." *Id.* (citing *Daubert,* 509 U.S. at 593-594). *Daubert's* gatekeeping obligation applies not only to "scientific" expert testimony, but to all kinds of expert testimony. *Id.* (citing *Kumho Tire*, 526 U.S. 137, 147). Rule 702 makes no distinction between "scientific" knowledge and other forms of specialized knowledge. *Id.* The *Daubert* framework for assessing expert testimony is applicable to social science experts, just as it applies to experts in the hard sciences. *Hale v. Gannon*, 2012 WL 3867039 (S.D. IN 2012). The measure of intellectual rigor will vary by the field of expertise and the way of demonstrating expertise will also vary, but *Daubert* nonetheless applies. *Id.* It is not a "weight versus admissibility" standard. *Robinson v. Davol, Inc.,* 913 F.3d 690, 696 (7th Cir. 2019). The goal of *Daubert* is to assure that experts employ the same "intellectual rigor" in their courtroom testimony as would be employed by an expert in the relevant field. *Jenkins v. Bartlett*, 487 F.3d 482 (7th Cir. 2007).

Dr. Rossmo should be prohibited from testifying at trial, and his report held to be not admissible in evidence. Much of his proposed testimony is impermissible under Rule 702 and 704(b). The testimony would also not assist the trier of fact.

   **III.     The proffered testimony from David Hennessy should be excluded under 702 and 704(b).**

The proffered testimony of Mr. Hennessy was previewed in an affidavit presented at the summary judgment stage. [Dkt. 50-29.] It contains a combination of a brief recitation of facts followed by what amounts to legal argument. Rather than opining about some specialized knowledge that might help the fact-finder, Hennessy offers legal arguments and attacks on Benner's credibility, while at the same time vouching for Rainsberger's credibility. None of this is admissible testimony.

Expert testimony may be excluded under Federal Rule of Evidence 704(b), which prohibits expert testimony on issues like intent, the truth or falsity of allegations, or legal conclusions. Additionally, testimony must be relevant under Rule 401 and cannot be unduly prejudicial or confusing under Rule 403.

While there can be no dispute as to Mr. Hennessy's experience, experience is hardly a qualification [for determining legal effect] when there is a knowledgeable gentleman in a robe whose exclusive province it is to instruct the jury on the law. *Marx & Co. v. Diners Club, Inc.*, 550 F.2d 505, 512 (2nd Cir. 1977)(holding that the trial court erred in admitting expert witness lawyer's opinion as to the legal obligations of the parties under the contract).[3]  Just as with Dr. Rossmo, this proffered testimony will not assist the trier of fact to understand the evidence or to determine a fact in issue. The subject matter of the proffered testimony does not contain factual issues where specialized knowledge will assist the trier of fact to understand the evidence. Hennessy's opinion on whether probable cause existed, or the strength of the case, is inadmissible. (See generally *Mason v. City of Indianapolis*, 2007 WL 2700193 (S.D. 2007)(holding that as a preliminary matter, criminal defense attorney's interpretation of statute and opinion on whether probable cause existed would not be considered in the court's summary judgment decision.). Likewise, Hennessy's

---

[3] The court reasoned that such testimony amounted to no more than an expression of the witness' general belief as to how the case should be decided. *Marx,* 550 F.2d at 510 (citing McCormick on Evidence).

opinion on the investigation is not admissible. This evaluation is within the qualifications of the ordinary juror, and is not helpful to the jury in making their determination in this case. *Dahlin v. Evangelical Child and Family Agency,* 2002 WL 31834881 (N.D. IL 2002)(holding that expert was no more qualified than the ordinary juror to opine on whether the adoption agency's response to the adoptive parents was honest and complete).

### Conclusion

Neither the testimony of Dr. Rossmo nor David Hennessy meet the requirements for admissibility under Rule 702. Neither will assist the trier of fact to understand the evidence or to determine a fact in issue. The ordinary juror is well qualified to listen to the testimony and review the other evidence in the case and reach a conclusion. To allow the proffered testimony would usurp the jury's factfinding role. The testimony also includes legal opinions as to the existence of probable cause and wrongful arrest. This testimony is likewise inadmissible.

Even if the proffered evidence is deemed relevant, it fails to satisfy a balancing test under Rule 403. That rule provides that the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed.R.Evid. 403.

Therefore, the Defendant respectfully requests that the testimony and report of Dr. Kim Rossmo be excluded, and that the testimony and affidavit of David Hennessy be excluded.

Respectfully submitted,

/s/ *Anne C. Harrigan*

Anne C. Harrigan, No. 23601-64
OFFICE OF CORPORATION COUNSEL
200 East Washington Street, Suite 1601
Indianapolis, IN 46204
Telephone: (317) 327-4055

13

Fax: (317) 327-3968
E-mail: anne.harrigan@indy.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing reply was filed electronically on this 1st day of

July, 2019. This filing will be served on the following by operation of the Court's electronic case

filing system, and parties may access this filing through the Court's system.

Richard A. Waples
WAPLES & HANER
410 N. Audubon Road
Indianapolis, IN  46219
rwaples@wapleshanger.com


_/s/ Anne Harrigan_
Anne Harrigan
Chief Litigation Counsel