UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WILLIAM RAINSBERGER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:16-cv-00103-TWP-MJD |
| | ) |
| CHARLES BENNER, | ) |
| | ) |
| Defendant. | ) |

### ENTRY ON DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY

This matter is before the Court on Defendant Detective Charles Benner's ("Benner") Motion to Exclude Expert Testimony (Filing No. 115). On February 7, 2019 the Seventh Circuit issued a mandate affirming the district court's determination that Benner is not entitled to qualified immunity in this action for malicious prosecution filed by Plaintiff William Rainsberger ("Rainsberger"). This matter is now scheduled for trial by jury on January 27, 2020. In his final witness list, Rainsberger lists two expert witnesses to testify about the quality of the police work in this case and how it compares to accepted methods of policing. Benner moves to exclude the reports and testimonies of those experts. (Filing No. 115.) He argues that their expected testimony does not comply with Federal Rules of Evidence 702 and 704(b). Rainsberger responds that the Seventh Circuit has interpreted the Rules of Evidence to allow the bulk of the expert opinion he intends to offer at trial. (Filing No. 119.) For the following reasons, the Court **grants in part and denies in part** Benner's Motion.

### I.   BACKGROUND

The facts of this case are set forth in detail in the Court's Entry on Motion for Summary Judgment (Filing No. 73 at 2-13). The Court provides an abbreviated summary of the facts below.

As he did at the summary judgment stage, Benner disputes many of these facts. On November 19, 2013, Rainsberger discovered that his mother Ruth Rainsberger ("Ruth") had been attacked in her home. A blanket covered most of her shoulders and head, and Rainsberger did not remove it because it was stuck to the wound and he believed it was acting as a bandage. He called 9-1-1 from her landline telephone. When the responding paramedic arrived, Rainsberger told him that someone had "caved in his mother's head." The paramedic later reported to Benner that he thought it was "odd" that Rainsberger said his mother's head had been caved in because he had not removed the cloth to look at her injuries.

Benner arrived at the scene shortly thereafter and did a walkthrough of the apartment. The walkthrough revealed no signs of forced entry, and Benner ruled out robbery as a motive for the attack. The following day, Ruth died from her injuries. An autopsy determined the cause of death to be multiple blunt force trauma to the head, possibly caused by a hammer or similar object. Her death was ruled a homicide.

Benner interviewed Rainsberger as well as his brother Robert Rainsberger ("Robert") and his sister Rebecca Rainsberger in connection with the investigation. Later he asked the three to come to Indianapolis Metropolitan Police Department headquarters, ostensibly to review the results of Ruth's autopsy. There he accused Rainsberger and Robert of murdering Ruth for money and asked them to take a polygraph test. Upset at being brought to the station under false pretenses and being accused of his mother's murder, and because he considered polygraphs unreliable, Rainsberger refused to take a polygraph. However, Rainsberger and Robert agreed to give fingerprints and DNA buccal swabs. Benner, however, did not wait for the results of DNA tests before seeking to have Rainsberger arrested and charged. The prosecutor declined to pursue the first arrest request, and Benner went back to find more evidence.

2

In May 2014 Benner went to the prosecutor with a second probable cause affidavit. The second probable cause affidavit did not disclose the results of the DNA test—the DNA of two males was found, but it did not implicate Rainsberger or Robert. Benner's investigation focused on Rainsberger for several reasons. Security camera footage from outside a Kroger, where Rainsberger was just before he discovered his mother's body, showed him disposing of an item in the trash. Rainsberger's mother had roughly $20,000.00 in cash and $80,000.00 in certificate balances at the time of her death. Her three children were the beneficiaries for all of her assets. Telephone records showed that two calls were placed from Ruth's landline to Robert's cell phone just after Rainsberger claimed he discovered his mother had been attacked.

According to Rainsberger, Benner composed and submitted a probable cause affidavit that was riddled with lies and undercut by the omission of exculpatory evidence. ([Filing No. 96 at 4](#).) Based on that flawed affidavit, Rainsberger was arrested, charged and imprisoned for two months. *Id* at 4-5. On July 7, 2015, the Prosecutor's Office dismissed the case against Rainsberger. On January 12, 2016, Rainsberger filed the instant Complaint, alleging unlawful seizure in contravention of the Fourth Amendment to the United States Constitution and unreasonable or malicious prosecution in violation of the Fourth and Fourteenth Amendments. ([Filing No. 1 at 5](#).)

Additional facts will be provided below as necessary.

## II.     LEGAL STANDARD

Federal Rule of Evidence 104 instructs that "[t]he court must decide any preliminary question about whether a witness is qualified … or evidence is admissible." Fed. R. Evid. 104(a). Federal Rule of Evidence 702 provides that expert testimony is admissible if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or date; (c) the testimony is the product of

3

reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. A trial judge:

> Must determine at the outset … whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue…. Many factors will bear on the inquiry….

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). Notably, "[t]he principles set forth in *Daubert*, which addressed scientific testimony, apply equally to non-scientific fields." *Manpower, Inc. v. Ins. Co. of Pennsylvania*, 732 F.3d 796, 806 (7th Cir. 2013) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147-49 (1999)).

The Court has a "gatekeeping obligation" under Rule 702, and "must engage in a three-step analysis before admitting expert testimony. It must determine whether the witness is qualified; whether the expert's methodology is scientifically reliable; and whether the testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017) (quoting *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010)). Put another way, the district court must evaluate: "(1) the proffered expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony." *Gopalratnam*, 877 F.3d at 779.

Additionally, expert testimony must be relevant under Rule 401 and cannot be unduly prejudicial or confusing under Rule 403.

### III. DISCUSSION

Rainsberger seeks to examine two expert witnesses at trial, Dr. Kim Rossmo ("Dr. Rossmo") and David Hennessy ("Hennessy"). ([Filing No. 64](#).) He designated an affidavit signed by Hennessy as well as a Report authored by Dr. Rossmo and Dr. Rossmo's *curriculum vitae*

during the summary judgment phase of this litigation. ([Filing No. 50-29](); [Filing No. 50-31](); [Filing No. 50-32]().) Benner objected to the experts at that time, but the Court did not consider those documents when ruling on summary judgment, and thus reserved ruling on Benner's objections. ([Filing No. 73 at 14]() ("The Court has not relied on either affidavit or the expert report in making this ruling and, therefore, need not address Benner's arguments. Because the issue may arise again at trial, however, the Court notes that many of Benner's arguments regarding the opinions in the expert report appear to be well-taken, and William should carefully review the applicable law when deciding whether to offer the expert's testimony at trial."))

On July 1, 2019, Benner filed the instant Motion to Exclude Expert Testimony ([Filing No. 115]()). Below, the Court provides a brief summary of each expert's report and of the parties' arguments related to the report and anticipated testimony, before discussing the admissibility of the report and associated evidence.

**A.** **Dr. Kim Rossmo**

    **1.** **Summary of Report**

Dr. Rossmo, a former police officer and investigator who has researched and lectured on criminal justice issues, is the University Chair in Criminology at Texas State University. ([Filing No. 50-32]().) Dr. Rossmo has authored books and numerous journal articles on the subject and has lectured widely and trained police officers across the country and around the world on criminal investigatory failures. He produced a report in January 2017 titled "Tunnel Vision and Confirmation Bias in the Rainsberger Murder Investigation." ([Filing No. 50-31]().) To create his report, Dr. Rossmo reviewed materials relating to the case including depositions taken from interested parties, police statements, and Benner's notes. *Id.* at 54-56. Based on his review of these materials, he opines that "[t]he police investigation of the Ruth Rainsberger murder suffered

5

from tunnel vision and confirmation bias," and "Detective Benner failed to perform a thorough investigation and his affidavit for probable cause contained a number of false and misleading statements." *Id.* at 3. Dr. Rossmo lists eight core allegations made in Benner's probable cause affidavit and then explains why each of the eight is irrelevant, inaccurate, or misinterpreted and taken out of context. Dr. Rossmo concludes that Benner rushed to judgment, suffered from common cognitive errors like tunnel vision and confirmation bias, and failed to investigate alternative theories of the murder. *Id.* at 44.

2. **Benner's Motion to Exclude**

Benner moves to exclude Dr. Rossmo's report and testimony, arguing his opinions "are not based upon scientific facts or data, and do not appear to be the product of reliable principles and methods." (Filing No. 116 at 4.) In his expert report, Dr. Rossmo concludes that "Benner rushed to judgment and quickly decided William Rainsberger had killed his mother," that "Benner suffered from tunnel vision and failed to properly investigate other viable theories for the murder," and detectives exhibited "confirmation bias in their search, interpretation, and recall of evidence." (See Filing No. 50-31 at 44-45.) Benner contends that there are no tests of this theory, or standard by which an evaluation can be made regarding the conclusion advanced by Dr. Rossmo. *Id.* at 6. He argues that Dr. Rossmo weighed Benner's credibility when coming to the conclusions in his report, invading the province of the jury. *Id.* at 7. Benner also argues that much of Dr. Rossmo's report and testimony is focused on intent, the truth and falsity of allegations, and legal conclusions—and thus is prohibited by Rule 704(b).

Rainsberger responds that the law allows Dr. Rossmo to testify and "explain[] how Benner failed to follow reasonable police investigative practices and standards during his investigation and preparation of his probable cause affidavit". (Filing No. 119 at 1.) He notes that Benner

6

admits to the relevancy and admissibility of expert testimony on these topics by proffering his own expert on reasonable police investigations and the training of investigators not to succumb to tunnel vision and confirmation bias and on the proper preparation of probable cause affidavits. *Id*. at 7.

Rainsberger cites to federal courts that "have rejected similar challenges to the qualifications of social science-type experts such as a police investigators [sic] solely because their expertise is based on experience rather than hard science methodology or statistics." *Id.* at 8-9. Rainsberger's brief relies extensively on *Jimenez v. City of Chicago*, 732 F.3d 710, 719-21 (7th Cir. 2013), a case in which the Seventh Circuit found that a trial court did not err when it allowed the testimony of an expert on police practices to testify in a § 1983 suit alleging due process violations and malicious prosecution against the City of Chicago, Illinois. Rainsberger contends that under *Jimenez*, a police practices expert may testify if the opinions are confined to the reasonableness of Benner's investigation and technique and the failures of his investigation as measured against acceptable police standards, rather than conclusions about whether probable cause existed at any particular time of the investigation. (Filing No. 119 at 15-16.)

*Jimenez* explains that "[w]hen an expert offers an opinion relevant to applying a legal standard such as probable cause, the expert's role is 'limited to describing sound professional standards and identifying departures from them.'" 732 F.3d at 721 (quoting *West v. Waymire*, 114 F.3d 646, 652 (7th Cir. 1997)). The *Jimenez* court determined the trial court was correct to allow the police practices expert to testify "about the steps a reasonable police investigator would have taken to solve the []murder, as well as the information that a reasonable police investigator would have taken into account as the investigation progressed." *Id.* The expert "did not try to resolve conflicts in the testimony of different witnesses," nor did he "offer an opinion regarding whether

7

the police had probable cause" to make an arrest. *Id.* His testimony "would have helped the jury conclude that the departures from reasonable police practices were so important, severe, and numerous that they supported an inference" that an officer acted deliberately to violate the plaintiff's rights. *Id.*

Benner attempts to distinguish this case from *Jimenez*. He argues that an issue in *Jimenez* was that the detective incorrectly conducted a photo array with a witness for the purposes of identifying a suspect by showing the witness a picture of Jimenez directly beforehand. The practice of conducting a photo array for identification purposes, according to Benner, is subject to replicable procedures. "There are procedures on how to conduct a photo array or physical lineup with a witness. Officers tend to do and say the same thing each time to promote consistency." ([Filing No. 121 at 3](#).) But "there is no 'how to' on conducting a homicide investigation, and therefore it differs from procedures that are more clearly set forth such as *Miranda* waivers or presentation of photo arrays." *Id.*

The Court disagrees with that distinction. First, the detective in *Jimenez* was also conducting a homicide investigation, and the police practices expert testified as to how his investigation strayed from reasonable police work. The detective in *Jimenez* did not just manipulate a photo lineup to implicate Jimenez, his target, he also "used coercive tactics" to convince witnesses to falsely identify Jimenez. Second, the methods Benner employed in investigating Ruth's murder are not immune to standard or accepted practices. Use of cellphone location data or cellphone call records, his inspection of the crime scene, or his analysis of security camera footage may or may not have been up to the standards of reasonable police work. Expert testimony on those practices will assist a factfinder in determining whether Benner acted reasonably.

Benner is correct that much of Dr. Rossmo's report is focused on intent, the truth and falsity of allegations, and legal conclusions. But the Court is persuaded that Dr. Rossmo also has relevant expert testimony to offer in this case. That testimony is limited to describing sound professional standards and identifying how Benner departed from them. Dr. Rossmo may not explain the legal standard for probable cause, because that would invade the Court's role of explaining the law to the factfinder. Thus, sections of Dr. Rossmo's expert report like "Meaning of Probable Cause" ([Filing No. 50-31 at 11](#)) would need to be redacted if plaintiff's counsel seeks to offer the report into evidence, and Dr. Rossmo is not allowed to testify as to whether there was probable cause to arrest Rainsberger. He is also prohibited from assessing the credibility of witnesses and other evidence, as that is the job of the factfinder. Dr. Rossmo will be allowed to provide his opinion about the reasonable steps an officer would have taken to solve the murder of Ruth as well as the information a reasonable police investigator would have taken into account as the investigation progressed. Thus, under Federal Rule of Evidence 702, the motion to exclude Dr. Rossmo's expert testimony is **granted in part and denied in part**. Dr. Rossmo may testify as described above, however, he will not be allowed to explain the law to the jury, give his opinion on an ultimate issue, or assess the credibility of any witnesses or evidence. The Court will resolve specific objections to his testimony at trial.

### B. David Hennessy

#### 1. Summary of Affidavit

David Hennessy is an "experienced criminal defense attorney who represented William in the criminal case, and who uncovered the failures of Benner's investigation and the inclusion of false information in his probable cause affidavit, findings which led to the dismissal of the criminal charges." ([Filing No. 119 at 6-7](#).) According to Rainsberger, Hennessy "has represented thousands

of criminal defendants charged with major felonies and has carefully reviewed police investigations and probable cause affidavits in every case." *Id.* at 7.

Hennessy's affidavit, designated by Rainsberger for purposes of summary judgment, calls into question Benner's method of investigating Ruth's murder. ([Filing No. 50-29](#).) Hennessy opines that Benner made several mistakes during his investigation, and he also makes conclusory statements such as: "[a]s a direct result of Detective Benner's misleading statements, and his omission of important exculpatory evidence, William Rainsberger was falsely arrested and accused of murdering his own mother". *Id.* at 9.

### 2. **Benner's Motion to Exclude**

Benner moves to exclude Hennessy's testimony and affidavit, arguing their admission would violate Federal Rules of Evidence 702 and 704(b). He argues Hennessy's testimony "will not assist the trier of fact to understand the evidence or to determine a fact in issue." ([Filing No. 116 at 12](#).) His testimony "does not contain factual issues where specialized knowledge will assist the trier of fact to understand the evidence." *Id.* And "Hennessy's opinion on whether probable cause existed, or the strength of the case, is inadmissible." *Id.*

Rainsberger agrees with this last point, admitting that "Hennessy's opinions that probable cause did not exist and William was 'falsely arrested'… are impermissible legal conclusions properly excludable from evidence at trial." ([Filing No. 119 at 24](#).) However, Rainsberger contends the remainder of Hennessy's opinion testimony is admissible for the same reason Dr. Rossmo's testimony is admissible—it will inform the factfinder as to reasonable investigative techniques and how Benner's behavior departed from those techniques.

For the same reasons expressed in Section III.A.2 of this Entry, the Court agrees. Thus, under Federal Rule of Evidence 702, the motion to exclude Hennessy's expert testimony is

**granted in part and denied in part**.  Hennessy may to testify on police practices as long as he limits that testimony to describing sound professional standards and identifying how Benner departed from them.  Hennessy may not opine as to the credibility of any witnesses or give conclusions of law or opinions on ultimate issues in the case.  The Court will resolve specific objections to Hennessy's testimony at trial.

## IV. CONCLUSION

For the reasons explained above, Benner's Motion to Exclude Expert Testimony ([Filing No. 115](#)), is **GRANTED in part and DENIED in part**.  The Court finds the proffered expert testimony as limited by this Entry, is relevant under Rule 401 and will not be unduly prejudicial or confusing under Rule 403.  The Court limits the testimony of Rainsberger's police practices experts to describing sound professional standards and opining as to how Benner strayed from those standards during his investigation.  The experts are not be permitted to give conclusions of law, opine on an ultimate issue, or judge the credibility of witnesses.

**SO ORDERED.**

Date:  11/18/2019

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Richard A. Waples
WAPLES & HANGER
rwaples@wapleshanger.com

Traci Marie Cosby
OFFICE OF CORPORATION COUNSEL—CITY OF INDIANAPOLIS
traci.cosby@indy.gov

Anne Celeste Harrigan
OFFICE OF CORPORATION COUNSEL—CITY OF INDIANAPOLIS
anne.harrigan@indy.gov